First case on today's docket is In Interest of Patrick Claude D. And we have Mr. Larry Wells representing the appellant and we have Mr. Tim King representing the appellee. And you may proceed when you're prepared to do so, Mr. Wells. May I please report, counsel? My name is Larry Wells. I represent the minor in this cause. The minor was convicted of aggravated criminal sexual assault and he raised several issues before this court. And he would stand on his feet concerning any point that's not reached here today. First point to address is the minor's denial of the minor's right to a speedy trial. The minor filed a request for a speedy trial under the Juvenile Courts Act. The effective date of the provision was 1999. The state, in response, filed a motion to strike. And the motion to strike is based on two cases, one from 1994 and one from 1996, which stand for the proposition that a juvenile is not entitled to the protections of the adult speedy trial provisions. The defense attorney below pointed out that the state's cases were either superseded or irrelevant. They were superseded if they're cited for the proposition that the juvenile does not have any speedy trial rights. Because, of course, in 1999 a provision was passed that granted juvenile speedy trial rights. And it's irrelevant if it's cited for the proposition that the juvenile has no adult speedy trial rights, because the adult speedy trial rights were not invoked. The juvenile requested a speedy trial under the Juvenile Court Act. Nevertheless, the circuit court granted the motion to strike and held that the minor didn't have any right to a speedy trial. And so this case went forward without any speedy trial provision protection for this minor at all. There's only two additional points that need to be made here. Number one, more than 120 days went by. 140-something days went by. So there was a violation of the speedy trial right. And the other point is that the state here doesn't address the speedy trial right. Instead, it cites for the same two cases, which are either irrelevant or superseded, depending on how you look at it. Aren't those constitutional and statutory? Is that what you're arguing? What are you going to go? Constitutional? No. Going with the Juvenile Court Act. Okay. As cited at the circuit court level, that was relied on below and relied on here. 120 days under the Juvenile Court Act. What about the request that the state need for additional time for the DNA? Sure. There's a case called Pupil v. Battles, which says that there has to be an establishment of due diligence and the Battles case says you can't just automatically grant just because there's authority to grant. And yet, it was automatically granted. That's one important point. The state didn't establish any due diligence whatsoever. The other important point is that you have to remember that at the hearing, the court wasn't weighing any right of the speedy trial time whatsoever. There was nothing to balance on the other side. So the court didn't think there was any time running. And so there couldn't have been any consideration of the juvenile's right to speedy trial. The court didn't think he had one. The motion requesting it was strict. So since more than 120 days went by, there's a violation of speedy trial right. We've got to ask this court to reverse outright on that ground. Next is the reasonable doubt. This minor does not prove guilty beyond a reasonable doubt because of the contradiction in the evidence. The complainant has contradicted herself, and she's contradicted by the medical evidence. I tried to think of a hypothetical that would take sex out of it because sex tends to foul our thinking. And I came up with battery. I think battery's a good one. Let's suppose that the complaining witness here had complained that she'd been punched violently in the stomach and thrown down the flight of stairs. And the minor's on trial for two counts of simple battery. And then the complaining witness gets on the stand and says, oh, yes, that's right.  But I've changed my mind. I wasn't punched violently in the stomach. I'm not going to claim that anymore. But I was thrown down the flight of stairs. That kind of contradiction, that basic contradiction, that evidence is too weak to support the conviction. And let's suppose further in the hypothetical that the complaining witness had been examined by a doctor and there was no bumps and bruises at all. Now the state in that case would come back and say, well, you don't have to have bumps and bruises to be convicted of simple battery. And, of course, that's perfectly true. But that's not the evidence in the case. The defendant would be tried on a case where the complaining had fallen down the flight of stairs. And in that case, the medical evidence would contradict it. If there's no bumps and bruises, that's just like what we have here. We have a complaining witness who says to the police, I've raped in the vagina, violently raped in the vagina, raped in the anus, and raped in the vagina again. She gets on the stand, withdraws any claim of being raped in the anus. But she does say I was raped in the vagina. She managed to claim that. But the contradiction, dropping that other violent attack that's so central to her original story is a contradiction that shows the evidence is insufficient to sustain the conviction on review. And, as in the hypothetical complaining witness here, was examined by physicians. Her pulse rate was normal. Blood pressure was normal. Heart rate was normal. She was cheerful. She was happy. She was easygoing. There's not a mark on her. She doesn't have any bruises. She doesn't have any injuries of any kind. There's no swelling or irritation of the vaginal area. And her hymen is intact. And then, as predicted, the state comes back and says, well, you don't have to have any of those things for a sexual assault conviction to be upheld. And of course that is true. Of course that is true. There could be a penetration orally. There could be an allegation of a touching type of penetration. That is not what this trial was about. This complaining witness said she was dragged into the shed, was there for half an hour, and was subject to a violent attack. She hit her. She struck her. She hit. She yelled. She thrashed around. And she said she felt the minor's penis going inside of her while this was going on. This was a violent rape, according to her. There was semen, however, found. Oh, sure. Yes, on the floor and then a microscopic amount in the perineum area. That's right. So small that they only had to boost it up to even find it. Tiny enough. So as far as the violence that she testified to, she couldn't possibly have suffered that attack. She was examined by a physician, and there's no mark on her. She couldn't have suffered that attack. And it's not enough for this case to say that there's another theory that could support it. That wasn't what the trial was about. The minor here was tried on evidence of a violent attack, including penetration, while there was a struggle. That could not possibly have happened. And when you combine that, especially with the contradiction in the evidence, there's not enough evidence to convict her. We cite a case on page 8 and 9 of our brief that says that it's this court's duty to carefully examine the evidence that dukes to trial and give due consideration to the fact that the fact finder saw and heard the witnesses. But after such consideration, the courts have the opinion that the evidence is not sufficient to establish guilt beyond a reasonable doubt. The duty of the court to reverse the judgment. That's exactly the situation we have here, and we ask this court to reverse the conviction. Finally, address the minor's right to have his family present at the trial. Now, the minor does not have the right to have a public trial in the same degree that an adult has. The Juvenile Court Act bars the general public, but here the violation of the minor's rights is because his family was present. This minor child doesn't have parents. His mother's out of the picture. His father's lost. He did have a guardian, though, didn't he? That's right. That was not the person that you claimed was entitled to have in the courtroom? I'm sorry, I didn't hear the question. The guardian was not the aunt that you claimed should have been permitted to be in the courtroom, right? Yes, that's right. He was being raised by his aunts. One aunt was his official guardian, and another aunt, Aunt Linda, was as violent to be his guardian. One aunt was a great aunt. The other was a first-level aunt, and she was younger, and when he got out, he was going to live with her. And Aunt Linda shows up at the trial, and on motion to stay, over objection, she's ejected. And the Juvenile Court Act states that the minor's family, not single family member, not parents, but family, is supposed to be allowed to support the minor in his case. And here, this is a very close family member, someone who is trying to get custody or guardianship of the child, and it was the violation of the minor's right to have his family present to have her ejected. And when there's a denial of a right like this, there's no need to show any prejudice. And here, this minor needed to be supported, and the state of Illinois should have bent over backwards to make sure that he was supported by his family, especially since he didn't have his parents. So we'd ask this court to reverse outright because of a speeding trial violation, reverse outright for lack of evidence, or at least send his case back for a new trial because of denial of the minor's right to have his family present. Are there questions? Thank you, Mr. Wells. I'd like the opportunity to request Mr. King. Thank you, Justice Chapman. Your Honor, and please, the court. My name is Timothy James King. I represent the people of the state of Illinois. And in my time before you today, I will show you why the defendant's conviction should be affirmed for aggravated criminal sexual assault. I'll respond to the line of the defendant's raising of his issues. He first talks about the speeding trial, that the juvenile act is the one which has the speeding trial code on it. And if this is correct, if we presume to use this instead of the state cases which use the adult criminal code, the court may extend the period of detention not more than 120 additional days by statute. The continuance here, I point this court specifically to the record, and it states on page 22 of the common law record, the state's motion for continuance specifically states, and I quote, the DNA testing has in fact been delayed on the part of defense in order for the defense expert to coordinate with the Illinois Crime Lab per this court's order of June 25, 2008. Again, I would point this court to the record on the transcript of 73008 on page 10, which states, from the defense trial attorney, we understand that DNA is not here. We're not objecting to continue or its continuance for a trial. Therefore, by the defendant's own words and actions, the defendant attributed the delay to himself. The statute would mean you get 120 days plus 30 for a total of 150 with that continuance you're talking about, or what are you? It's 120 additional days in addition to the speeding trial demand. So how many days then? I'm just trying to figure out how many days he was in jail and how many you think were attributable to him or not attributable to him. It would be 240 days under the 120 plus the additional 120. But even if we used, for example, the 30 additional days, that would be 150. Here, the defendant was in jail in custody since the speedy trial demand for 141 days. So even under that presumption, the speedy trial demand was still not improperly invoked because the continuance was attributable to the defendant. And the defendant here, Mr. Wells, states that Justice Chapman had asked the question, well, what about the continuance? And Mr. Wells cites the case of the people versus battles and say, well, there wasn't any due diligence. The trial court just arbitrarily wrote it off and said the continuance should be fine. That's not the case. The state's motion specifically stated it's because of the defense not coordinating with the Illinois Prime Lab to give this DNA evidence. The defense stated specifically to the trial court, we understand the DNA is not here. We're not objecting to the continuance. Now, the defendant, as Mr. Wells points out in his reply brief, did state that we're objecting to the custody. But the trial court, understanding both of this, said, well, if you're not going to object to the continuance and you have attributed this delay to yourself, then he's going to stay in custody until we have this trial. He was there for 141 days, which is within the continuance time frame. And therefore, his trial should certainly – convictions should certainly not be outright overturned because of it. Now, the second point – Are there any other delays in the record that you believe are attributable to the defendant after he made the written speedy trial demand? I don't believe so, no, Your Honor. Okay. Now, the second point the defendant says is that he was not proved beyond a reasonable doubt. Your Honors, simply put, first we must go – actually, one more point. Again, it's abuse of discretion. So I'm just going to – as this Court noted in Peeble v. Bean, aside from no review at all, the abuse of discretion standard is the most deferential standard we believe. But what about the fact that the judge apparently was confused about, you know, that there was any statute that controlled the speedy trial? Again – So how could he be weighing the rights? Even if we presume that the trial court incorrectly did – and he said, okay, the adult criminal code shouldn't apply here, the juvenile code – he didn't weigh any. The facts of the record clearly show that the continuance was attributable to the defendant, and he was in custody for 141 days after the speedy trial demand. That in and of itself shows by the facts to resolve any inconsistency or problem, regardless of whether the trial court was wrong or improperly applied the criminal code or not. What is the State's position on this? Does this juvenile provision apply to this case? Your Honor, that's an interesting question, and to be honest with you, it's not very clear. The defendant states that the outmoded cases which the State used in its brief were overturned. That's not the case. Westlaw does not cite red flags and say that either of those cases are overturned. The precedent that's established in those cases is diametrically opposed, however, to what the defendant says the Juvenile Court Act states. So there's certainly some confusion in the law, but regardless, for the sake of consistency here, regardless of whether this court believes the juvenile code applies or whether we look at the criminal code for the adults, either way, the continuance was attributed to the defense. He stated it was attributed to them, and it was 141 days. Clearly, within any reasonable time frame, the continuance attributed to the defense plus the 120 days. Secondly, as to the reasonable doubt, look at the defendant's own confession. Again, the record speaks for itself. The defendant states in his interrogation with the police, I did do it. Again, the defendant states in his People's Exhibit 12 when the victim was screaming for him to stop, it's my fault for not hearing, so I got to accept that. The defendant's own words. Again, look at the victim's unsettling testament. The State, okay, did you feel any part of Patrick's body going in part of – any part of Patrick's body on you? Victim, yes. State's attorney, what did you feel on Patrick on you? Victim, I felt him going into me. Record, page 220, 222. Again, the State's attorney, okay, did Patrick's penis ever touch your vagina? The victim, yes. Page 223 of the record. The victim, in fact, without reading the entirety of the testimony, I'd point this court to 229, 231 of the record. The defendant would have this court believe that somehow the victim was unsure of herself and that she recanted her testimony and she completely abandoned the anal penetration authority. That is simply not the case. The victim had unsettling testimony where she was clearly shaken, so shaken, in fact, that the trial court said, why don't we stop and take a break? Surely, for the defendant to have this court believe that the victim just suddenly recanted her story like a shop complainant and that he cites it in the brief is simply foregoing and belying the context of the record. The victim here, this little girl, was so shaken by what had happened to her that she had to stop. The trial court had to stop the proceedings so she could catch her breath. And then once she got back on the stand, the State's attorney said again, okay, now, you still have to tell the truth, okay? All right, you told me earlier that you felt Patrick's penis touch the area of your vagina, correct? Is that the only place that Patrick's penis touched you? It also touched my butt. Again, the victim states that, and that's on 231 of the record. She did not recant her testimony and abandon it like the shop victim that the defendant relies on primarily in this case. Rather, this victim was clearly shaken by her testimony. And furthermore, this is in the light most favorable to the prosecution. When we have DNA evidence from the defendant or superamazonic evidence not only in the crime scene but also in the victim's perineum as well as the victim's own testimony that the defendant raped her and the defendant's own confession that I didn't do it. Surely this is a case where a rational trial fact could certainly have found that the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt. Indeed, the defendant uses the Schott case as his primary one. Schott is so indistinguishable that it's almost – it's very – it's not legitimate to use that as a case. Simply put, Schott, the complainant, exhibited psychotic features, had previously testified against another individual in which she was proven to falsely accuse him of sexual assault, then on her trial recanted her testimony and stated specifically during the testimony, I made it all up. She exhibited aberrant sexual features for a child. None of that is present in this case. The victim was clearly shaken and certainly said at one point whether she was confused about anal penetration. But moreover, even the reliance on that is a bit misleading because the trial court did not find the defendant guilty of anal penetration. Rather, the trial court found the defendant guilty of vaginal penetration and vaginal penetration alone, and that part of the victim's testimony was unquestionably and unequivocally consistent. Patrick and her did not have a dating relationship, nor did she consent at any time, nor say that she consented to any type of sexual advance. In the light most favorable to the prosecution, this is a case where the evidence was certainly sufficient to sustain a conviction for the defendant. Now, the defendant forgoes his confession argument. There's a confession rather long as part three where he says that it was not knowingly or voluntarily made. Apparently, he stands on his brief there. I would briefly argue that and state that the state provided the left row of cases that show clearly that the defendant's confession was knowingly or voluntarily made. I cited for the record the defendant's normal range of intelligence, 104 on his visual, 101 on his verbal, 102 composite intelligent quotients, all in the average range. And that's on page 81 of the record. Again, I thank you for your time, Your Honor. Thank you, Mr. King. Mr. Wells, rebuttal. Thank you, Your Honor. I will start off with directing this Court's attention to page 6 of the reply brief. The state is relying on an allegation made in its motion concerning the speeding trial matter that it had alleged certain things for the defense. Those allegations in the state's motion are not binding on the defense. There was a hearing on this matter, and the state quotes a section of this transcript of that hearing, and it is misleading. The quote that's pertinent is, quote, we're objecting to the continuance on detention, close quote. So the defense didn't have any objection to a continuance as long as they let the child go. They were keeping the child in jail, and the objection was to a continuance while the child was continuing in detention. And the Court even said that, that it was granting the continuance, quote, over the objection of defense, close quote. That's on July 30, 2008, transcript of page 10. The state's quotation is misleading. Concerning reasonable doubt, this child never confessed to raping, as the state said here. He, after enormous pressure put on him by the police, including many lies that were disreputable, he admitted that he, quote, did it, close quote. And they never got to where this child would say what it was he thought did it meant. He was asked directly whether there was penetration, and he said, quote, not really, close quote. It was wrong for the state to claim that he confessed to any kind of violent act or rape or anything like that. There's nothing like that in there. And as far as the contradiction in the evidence, we would point to the medical examiner evidence at page 41 of the trial, finding the complainant smiling, pleasant and agreeable, cooperative, pain-free, and a heart rate of normal, besides having no irritation whatsoever in the vaginal area and no marks on it after a supposedly violent struggle for half an hour. And the state's case comes down to a witness who comes on the stand and says, you know, now that I've had a chance to think about it, I wasn't able to rape. What kind of evidence is that? That can't be sufficient for an opening conviction. Do you have a calculation on the number of days? They said it was 141 days. I believe that's correct. You do believe it's correct? I believe 141 days is correct. I think the child was actually in custody for 193 days. There was some delay before he made the request, and then, of course, his request was stricken. And as far as I know, there's no allegation by the state that there was any other source of delay other than this continuance, and there was no examination of due diligence here. And none of the items that are listed in the Battles case to show the witness were met. And the court? Was the motion for continuance to get the DNA done within the 120 days? Yes, I believe it was. Okay. Thank you. Thank you. Was there any questions? Mr. King, thank you both for your briefs and your arguments, and we'll take the matter under review.